**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHARLES E. THORNTON, #Y19115,** | **)** | |
| **Plaintiff,** | **)** | |
| **vs.** | **)** | **Case No. 19-cv-01371-SMY** |
| **JANE DOE, JACQUELINE LASHBROOK, JOHN BALDWIN, MOHAMMED SIDDIQUI, RON SKIDMORE, ANGELA CRAIN, MS. MCGEE, NURSE PRACTITIONER ZIMMER, JOHN DOE, TIMOTHY QUALLS, WEXFORD HEALTH SOURCES, INC., and WARDEN OF MENARD CORRECTIONAL CENTER** | **)** | |
| **Defendants.** | **)** | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Charles Thornton, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. Plaintiff asserts claims under the Eighth Amendment and seeks monetary damages and injunctive relief. This case is now before the Court on Plaintiff's Motion for Leave to File Amended Complaint. (Doc. 14) and Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 15). Plaintiff is within the time to amend his pleading once as a matter of course pursuant to Federal Rule of Civil Procedure 15(a)(1). As such, the Motion for Leave to File Amended Complaint (Doc. 14) is **GRANTED**.

The Amended Complaint is subject to preliminary review under 28 U.S.C. § 1915A, which

requires the Court to screen prisoner Complaints to filter out nonmeritorious claims. 28 U.S.C. § 1915A(a). Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

**The Amended Complaint**

Plaintiff makes the following allegations in his Amended Complaint: Plaintiff was shot in the mouth prior to his incarceration. The bullet lodged on the right side of his neck at the C3 and C4 vertebral level. Doctors at Stroger Hospital told him that because it was lodged next to his spinal cord, surgical removal of the bullet could result in paralysis.

Plaintiff went to sick call on April 13, 2018 because he was having pain in his neck. He was seen by Jane Doe, who is not a licensed registered nurse. He explained to Jane Doe that a few days prior, another inmate had put him in a choke hold which caused intense pain in the area where the bullet is lodged and up and down his spine. He complained that it was painful to move his head in any direction, that he was continuing to experience shooting pain up and down his spine, and that he had pain in his right shoulder and arm. He also reported that he was having difficulty sleeping because of the pain which he rated at level 10 and that the pain was affecting his daily activities, including eating and exercising. He asked to see a doctor immediately and stated he needed a stronger dose of his prescribed medication. Jane Doe told Plaintiff he would continue to have these problems as long as the bullet remained in his neck and there was nothing that could be done. She instructed to submit another sick call if his symptoms worsened and sent him back to his cell without any medical treatment and without a referral to see a doctor. She entered a false account of the visit in his medical records that stated he had zero pain and no signs of obvious discomfort.

Plaintiff alleges that Jane Doe knew or had reason to know that performing an independent medical assessment including formulating a treatment plan was beyond her education level and qualifications and was a violation of the Illinois Nurse Practice Act. Jane Doe knew that she was not qualified to perform an assessment on Plaintiff during the sick call. She owed Plaintiff a duty of reasonable care under the Illinois Nurse Practice Act and breached that duty by conducting an assessment of Plaintiff when she was not qualified to do so.

There was a major lockdown on April 26, 2018 and an institutional shakedown was executed by the tactical team. Prior to removal from his cell by members of the tactical team, Plaintiff explained to them that he was in severe, constant pain and told them about his pre-existing medical condition, but they ignored him. They handcuffed him behind his back and told him to keep his head down looking at the ground. He told them that would cause him tremendous pain. The tactical officers told him if he looked up or at anyone, he would be severely disciplined. He had to remain in that position while seated in the chapel for the duration of the shakedown, which was approximately three hours. While seated in that position, Plaintiff began experiencing severe throbbing pain in his neck and in his right shoulder down his arm. He felt severe shooting, stabbing pain in his spinal cord. He informed Ms. McGee who was stationed in the chapel. She disregarded his complaints of pain and told him to "talk to the IDOC about it."

After the April 26, 2018 incident, Plaintiff submitted sick call kites seeking medical attention. He received a sick call pass to see Dr. Siddiqui from gallery correctional officer John Doe at 7:30 a.m. on June 11, 2018. John Doe told him he had another sick call pass but did not hand him the slip. John Doe told him his cell door would be on deadlock until he was taken to his medical appointment. Commissary line began at 9:00 a.m. and, because his cell was not deadlocked, Plaintiff left his cell. He asked John Doe if he still had his medical appointment. John

Doe told him he did not believe so since his cell door was not on deadlock. Plaintiff told John Doe he was in severe pain and had waited for two months to see the doctor. He then stated if he was not going to see the doctor he would struggle to commissary because he "[did] not have any soap and what not."

On his way to commissary, Plaintiff spoke to Lieutenant Timothy Qualls and told him about his severe pain and his sick call pass to see Dr. Siddiqui. Qualls told him if his cell door was not on deadlock, his medical appointment was cancelled. Plaintiff expressed concern about why his medical appointment was cancelled. Qualls told him to go ahead to commissary and he would make sure Plaintiff saw Dr. Siddiqui after returning from commissary.

When Plaintiff returned to his cell after commissary, he asked John Doe about his medical appointment. John Doe told him he had chosen commissary over his medical appointment. Plaintiff explained that he had spoken with Qualls and had been told to go to commissary and he would see Dr. Siddiqui afterwards. Plaintiff asked John Doe to check with Qualls. John Doe left and when he returned, reported that Qualls said he had not spoken with Plaintiff.

Plaintiff submitted another sick call kite because he was continuing to experience severe, constant pain in his neck was having back problems. He was seen on August 8, 2018. When he asked to see the medical staff ID for the person conducting the sick call, she became irate and threw him out. Shen then entered a false account of the sick call in his medical records. Plaintiff filed a grievance about the incident. During the grievance process, Menard officials Lori Oakley and Kelly Pierce withheld the August 8, 2018 medical record from the ARB.

Plaintiff saw Nurse Practitioner Zimmer on August 9, 2018 and told her about his severe pain issues. He requested an increased dose of his prescription medication and a front handcuff permit. Zimmer became irate and argumentative with Plaintiff and threatened him with a written

disciplinary action because she assumed nothing was wrong with him. As he attempted to tell her about other issues, she called for an officer and Plaintiff was directed to go back to his cell. Zimmer wrote a false account of the visit in the medical records.

Wexford has a policy and/or custom of permitting unqualified medical personnel to perform licensed professional's duties such as independently conducting sick calls. Wexford, Menard Warden Jacqueline Lashbrook, Medical Director Dr. Siddiqui, Nursing Supervisor Angela Crain, and IDOC Director John Baldwin knew or had reason to know that LPNs and CMTs are not qualified to perform medical assessments and formulate treatment plans without the supervision of a registered nurse or higher level medical professional and that it is a violation of the Illinois Nurse Practice Act and increases the risk of harm to patients, including Plaintiff. Wexford, Lashbrook, Dr. Siddiqui, Crain, and Baldwin knew or should have known from the report in the medical class action, *Lippert v. Baldwin*, that unconstitutional practices are taking placed in IDOC, including at Menard. Their failure to correct these practices constitutes deliberate indifference to Plaintiff's serious medical needs. Wexford, Lashbrook, Dr. Siddiqui, Crain, and Baldwin knew or should have known about the failure to enforce the prison deadlock policy or protocol.

Based on the allegations in the Amended Complaint, the Court divides this *pro se* action into the following Counts:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Jane Doe for failing to treat Plaintiff's severe pain and failing to take any steps to assist him in getting treatment from a physician for his severe pain on April 13, 2018.

Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Ms. McGee for failing to take any steps to assist Plaintiff while he was suffering from extreme pain and/or denying him medical care on April 26, 2018.

Count 3: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants John Doe and Timothy Qualls for denying him medical care on June 11, 2018.

Count 4: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Nurse Practitioner Zimmer for denying Plaintiff medical care on August 9, 2018.

Count 5: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Wexford for its policy and/or custom of permitting unqualified medical personnel to perform licensed professional's duties and/or allowing LPNs and CMTs to render medical services they are not qualified to provide.

Count 6: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Lashbrook, Dr. Siddiqui, Crain, and Baldwin for allowing LPNs and CMTs to render medical services they are not qualified to provide.

Count 7: Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Wexford, Lashbrook, Dr. Siddiqui, Crain, and Baldwin for the failure to enforce the prison deadlock policy or protocol.

Count 8: State law medical negligence claim against Jane Doe for conducting an assessment of Plaintiff that she was not qualified to perform, failing to treat his severe pain, and failing to take any steps to assist him in getting treatment from a physician for his severe pain on April 13, 2018.

Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard.[1]

**Preliminary Dismissal**

Plaintiff names Ron Skidmore as a defendant in the case caption but makes no allegations against him in the statement of claim. Under Federal Rule of Civil Procedure 8, a Complaint must include a short, plain statement of the case against each individual. Merely naming a party in the caption of a Complaint is not enough to state a claim against him. *Collins v. Kibort*, 143 F.3d 331,

[1] An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

334 (7th Cir. 1998). Accordingly, Skidmore will be dismissed.

Additionally, Plaintiff makes allegations against individuals who are not identified as defendants in the case caption. The Court will not treat individuals not listed in the caption as defendants, and any intended claims against those individuals are considered dismissed without prejudice. *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (holding that to be properly considered a party, a defendant must be specified in the caption).

## Discussion

### Counts 1-4

To state a claim for deliberate indifference to a serious medical need, an inmate must plead facts showing that (1) he suffered from an objectively serious medical condition; and (2) the defendant was deliberately indifferent to a risk of serious harm from that condition. *Rasho v. Elyea*, 856 F.3d 469, 475-76 (7th Cir. 2017). An objectively serious condition includes an ailment that significantly affects an individual's daily activities, or which involves chronic and substantial pain. *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Plaintiff's allegations that Jane Doe, Ms. McGee, John Doe, Timothy Qualls, and Nurse Practitioner Zimmer failed to take any steps to assist him while he was suffering from extreme pain, denied him medical care, and/or provided inadequate medical care after he advised them of the seriousness of his condition are sufficient at this stage to allow the deliberate indifference claims in Counts 1, 2, 3 and 4 to proceed against them.

### Count 5

When a private corporation has contracted to provide essential government services, such as health care for inmates, the corporation can be held liable under §1983 if the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself. *Shields v.*

*Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Plaintiff alleges that Wexford has a policy and/or custom of permitting unqualified medical personnel to perform licensed professional's duties and, more specifically, permitting LPNs and CMTs to render medical services they are not qualified to provide. Based on these allegations and the allegations pertaining to Count 1, Count 5 will proceed against Wexford.

**Counts 6-7**

Plaintiff's conclusory statements that Defendants Lashbrook, Dr. Siddiqui, Crain, and Baldwin knew or should have known that there was a problem and failed to act, without any factual support or content, are only abstract recitations of the elements of the cause of action and fail to state a claim. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir. 2009)(although courts are obligated to accept factual allegations as true, they "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face"). Further, there is no suggestion that these individuals were personally responsible for allegedly violating Plaintiff's constitutional rights, and they cannot be held liable based solely on their positions as administrators as the doctrine of *respondeat superior* does not apply to section 1983 actions. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (2001). Accordingly, Counts 6 and 7 will be dismissed.

**Count 8**

Under Illinois law, to prove a claim of medical malpractice a plaintiff must show: (1) the applicable standard of care against which the professional's conduct must be measured; (2) an unskilled or negligent deviation from the standard; and (3) an injury proximately caused by the

deviation. *Sullivan v. Edward Hosp.*, 806 N.E.2d 645, 653 (Ill. 2004). Plaintiff's medical negligence claim[2] derives from the same facts as his federal constitutional claim in Count 1 and will be allowed to proceed at this stage. 28 U.S.C. § 1367(a). However, to ultimately pursue this claim, before the completion of the summary judgment phase of the case, Plaintiff must file the affidavit required by 735 ILCS § 5/2-622. *See Young v. United States*, 942 F.3d 349, 352-52 (7th Cir. 2019).

**Identification of Doe Defendants**

Plaintiff will have the opportunity to engage in limited discovery to ascertain the identity of the Doe Defendants. *See Rodriguez v. Plymouth Ambulance Serv*., 577 F.3d 816, 832 (7th Cir. 2009). The Warden of Menard Correctional Center will be added in his or her official capacity to respond to discovery aimed at identifying the Doe Defendants. Guidelines for discovery will be set by the undersigned judge. Once the name of the Doe Defendants is discovered, Plaintiff shall file a motion to substitute the newly identified defendants for the Does Defendant.

**Motion for Temporary Restraining Order and Preliminary Injunction**

Plaintiff filed a "Memorandum of Law in Support of Plaintiff's Motion for a Temporary Restraining Order and Preliminary Injunction." (Doc. 15). Plaintiff did not file a separate motion under Federal Rule of Civil Procedure 65, but the Court will treat his memorandum as a motion. He states he is seeking a temporary restraining order (TRO) and preliminary injunction "to ensure that he receives proper medical care" and requests medical treatment from a "suitable licensed professional nurse." (*Id.*, pp. 2 and 4).

[2] The Court has construed Plaintiff's negligence *per se* claim against Jane Doe as a medical negligence claim because he cannot make a negligence *per se* claim for an alleged violation of the Illinois Nurse Practice Act. Under Illinois law, "the violation of a statute is not negligence *per se*, which refers to strict liability but rather only *prima facie* evidence of negligence unless the legislature clearly intends to impose strict liability." *Abbasi v. Paraskevoulakos*, 718 N.E.2d 181, 186 (Ill.1999) (internal citations omitted). Plaintiff has not identified a violation of an Illinois statute that imposes strict liability.

A TRO may issue without notice to the adverse party only if "specific facts in an affidavit or a verified complaint clearly show that immediate or irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). A preliminary injunction is an extraordinary and drastic remedy for which there must be a clear showing that Plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). To obtain preliminary injunctive relief, a plaintiff must establish that (1) his underlying case has a reasonable likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 661 (7th Cir. 2015). If a plaintiff establishes these three elements, the Court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.* at 662. Mandatory preliminary injunctions – those requiring an affirmative act – are "cautiously viewed and sparingly issued," because they require the court to command a defendant to take a particular action. *Graham v. Med. Mut. of Ohio,* 130 F.3d 293, 295 (7th Cir. 1997).

Plaintiff seeks injunctive relief based on a sick call visit on April 13, 2018 when he was seen by a medical professional that he contends was not qualified to treat him and provided inadequate medical care. (Doc. 15, pp. 2, 9). He has not explained how seeing an unqualified medical professional on one occasion will result in immediate or irreparable injury without a TRO or preliminary injunction. Although he alleges continued pain and an increasing risk that the mobility in his neck will not be restored (*Id.*, pp. 2, 10), he has not provided information regarding his medical treatment or attempts to obtain treatment from 2018 to the present. Accordingly, the motion for TRO and preliminary injunction (Doc. 15) is **DENIED**.

## Disposition

**IT IS HEREBY ORDERED** that the Motion for Leave to File Amended Complaint is

**GRANTED** (Doc. 14) and the Clerk of Court is **DIRECTED** to file the proposed Amended Complaint.

**IT IS FURTHER ORDERED** that Counts 1 and 8 will proceed against Jane Doe, Count 2 will proceed against Ms. McGee, Count 3 will proceed against John Doe and Timothy Qualls, Count 4 will proceed against Nurse Practitioner Zimmer and Count 5 will proceed against Wexford Health Sources, Inc. Counts 6 and 7 and Defendants Ron Skidmore, Jacqueline Lashbrook, Mohammed Siddiqui, Angela Crain, and John Baldwin are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that the Clerk of Court is **DIRECTED** to **ADD** the **Warden of Menard Correctional Center**, in his or her official capacity only, to the docket for purposes of responding to discovery aimed at identifying the Doe Defendants.

The Clerk of Court shall prepare for Ms. McGee, Timothy Qualls, Nurse Practitioner Zimmer, Wexford Health Sources Inc., Warden of Menard Correctional Center (official capacity only), and once identified, Jane Doe and John Doe: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as

directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on the Doe Defendants until such time as Plaintiff has identified her by name in a properly filed motion for substitution of party. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.** As the Warden of Menard Correctional Center is in the case solely for discovery purposes, the Warden need not respond to the Amended Complaint. The Warden only needs to enter an appearance. The Warden will receive further instruction on discovery at a later date.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

**IT IS FURTHER ORDERED** that the Motion for Temporary Restraining Order and Preliminary Injunction (Doc. 15) is **DENIED**.

The Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer

or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 15, 2020**

***s/ Staci M. Yandle*____**
**STACI M. YANDLE**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate Defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the Defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.