**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **CHARLES E. THORNTON, #Y19115,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **vs.** | **)** | **Case No. 19-cv-01371-SMY** |
| | **)** | |
| **JANE DOE,** | **)** | |
| **JACQUELINE LASHBROOK,** | **)** | |
| **JOHN BALDWIN,** | **)** | |
| **MOHAMMED SIDDIQUI,** | **)** | |
| **RON SKIDMORE,** | **)** | |
| **ANGELA CRAIN,** | **)** | |
| **MS. MCGEE,** | **)** | |
| **MARY JO ZIMMER,** | **)** | |
| **JOHN DOE,** | **)** | |
| **WILLIAM QUALLS,** | **)** | |
| **WEXFORD HEALTH SOURCES, INC.,** | **)** | |
| **and WARDEN OF MENARD** | **)** | |
| **CORRECTIONAL CENTER,**[1] | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Charles Thornton, an inmate of the Illinois Department of Corrections currently incarcerated at Menard Correctional Center, filed this action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The case is presently before the Court on Plaintiff's Motion for Leave to File [Second] Amended Complaint (Doc. 37).

Following preliminary review of the First Amended Complaint pursuant to 28 U.S.C. § 1915A, the Court designated the following claims in this *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Jane Doe for failing to treat Plaintiff's severe pain and failing to take any steps to assist him in getting

[1] The Clerk of Court is **DIRECTED** to correct the docket sheet to reflect the complete and correct spellings of Defendants' names as stated in the case caption. (*See* Docs. 31, 44).

treatment from a physician for his severe pain on April 13, 2018.

Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Ms. McGee for failing to take any steps to assist Plaintiff while he was suffering from extreme pain and/or denying him medical care on April 26, 2018.

Count 3: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants John Doe and Timothy Qualls for denying him medical care on June 11, 2018.

Count 4: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Nurse Practitioner Zimmer for denying Plaintiff medical care on August 9, 2018.

Count 5: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Wexford for its policy and/or custom of permitting unqualified medical personnel to perform licensed professional's duties and/or allowing LPNs and CMTs to render medical services they are not qualified to provide.

Count 6: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Lashbrook, Dr. Siddiqui, Crain, and Baldwin for allowing LPNs and CMTs to render medical services they are not qualified to provide.

Count 7: Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Wexford, Lashbrook, Dr. Siddiqui, Crain, and Baldwin for the failure to enforce the prison deadlock policy or protocol.

Count 8: State law medical negligence claim against Jane Doe for conducting an assessment of Plaintiff that she was not qualified to perform, failing to treat his severe pain, and failing to take any steps to assist him in getting treatment from a physician for his severe pain on April 13, 2018.

(Doc. 17, pp. 5-6). Plaintiff was allowed to proceed on Counts 1 and 8 against Jane Doe, Count 2 against McGee, Count 3 against John Doe and Qualls, Count 4 against Zimmer, and Count 5 against Wexford Health Sources, Inc. (*Id.*, p. 11). Counts 6 and 7 and Defendants Ron Skidmore, Jacqueline Lashbrook, Mohammed Siddiqui, Angela Crain, and John Baldwin were dismissed without prejudice. (*Id.*). The Warden of Menard Correctional Center was added to the docket in

his or her official capacity only for purposes of responding to discovery aimed at identifying the Doe Defendants. (*Id.*).

**Motion for Leave to File Second Amended Complaint**

Plaintiff filed a Motion for Leave to File a [Second] Amended Complaint seeking to add claims against Lashbrook, Siddiqui, Crain, Skidmore, and Baldwin, who were dismissed at screening of the First Amended Complaint. He also seeks to add a claim against Defendants Qualls and John Doe. Under Federal Rule of Civil Procedure 15(a)(1)(A), "a party may amend its pleading once as a matter of course within [] 21 days after serving it." Otherwise, Rule 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave." Here, the motion to amend was filed more than 21 days after service and the Defendants have objected to Plaintiff's motion. (Docs. 38, 39).

Pursuant to Rule 15(a)(2), "the court should freely give leave when justice so requires." However, a district court may deny leave to amend for undue delay, bad faith, dilatory motive, prejudice, or futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993). The Second Amended Complaint is also subject to review under 28 U.S.C. § 1915, which requires the Court to screen prisoner Complaints. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

**The Second Amended Complaint**

Plaintiff makes the following allegations in the Second Amended Complaint: Plaintiff was shot in the mouth prior to his incarceration. The bullet lodged on the right side of his neck at the C3 and C4 vertebral level. Doctors at Stroger Hospital told him that because it was lodged next to his spinal cord, surgical removal of the bullet could result in paralysis.

Plaintiff went to sick call on April 13, 2018 because he was having pain in his neck. He was seen by Jane Doe, who is not a licensed registered nurse. He explained to Jane Doe that a few days prior, another inmate had put him in a choke hold which caused intense pain in the area where the bullet is lodged and up and down his spine. He complained that it was painful to move his head in any direction, that he was continuing to experience shooting pain up and down his spine, and that he had pain in his right shoulder and arm. He also reported that he was having difficulty sleeping because of the pain, which he rated at level 10, and that the pain was affecting his daily activities, including eating and exercising. He asked to see a doctor immediately and stated he needed a stronger dose of his prescribed medication. Jane Doe told Plaintiff he would continue to have these problems as long as the bullet remained in his neck and there was nothing that could be done. She instructed him to submit another sick call if his symptoms worsened and sent him back to his cell without any medical treatment and without a referral to see a doctor. She entered a false account of the visit in his medical records that stated he had zero pain and no signs of obvious discomfort.

Jane Doe knew that she was not qualified to perform an assessment on Plaintiff during the sick call. She knew or had reason to know that performing an independent medical assessment including formulating a treatment plan was beyond her education level and qualifications and was a violation of the Illinois Nurse Practice Act. She owed Plaintiff a duty of reasonable care under the Illinois Nurse Practice Act and breached that duty by conducting an assessment of Plaintiff when she was not qualified to do so.

There was a major lockdown on April 26, 2018 and an institutional shakedown was executed by the tactical team. Prior to being removed from his cell by members of the tactical team, Plaintiff told them that he was in severe, constant pain and told them about his pre-existing

medical condition, but they ignored him. They handcuffed him behind his back and told him to keep his head down looking at the ground. He told them that would cause him tremendous pain. The tactical officers told him if he looked up or at anyone, he would be severely disciplined. He had to remain in that position while seated in the chapel for the duration of the shakedown, which was approximately three hours. While seated in that position, Plaintiff began experiencing severe throbbing pain in his neck and in his right shoulder down his arm. He felt severe shooting, stabbing pain in his spinal cord. He informed Ms. McGee who was stationed in the chapel. She disregarded his complaints of pain and told him to "talk to the IDOC about it."

After the April 26, 2018 incident, Plaintiff submitted sick call kites seeking medical attention. He received a sick call pass to see Dr. Siddiqui from gallery correctional officer John Doe at 7:30 a.m. on June 11, 2018. John Doe told him he had another sick call pass but did not hand him the slip. John Doe told him his cell door would be on deadlock until he was taken to his medical appointment. Commissary line began at 9:00 a.m. and, because his cell was not deadlocked, Plaintiff left his cell. He asked John Doe if he still had his medical appointment. John Doe told him he did not believe so since his cell door was not on deadlock. Plaintiff told John Doe he was in severe pain and had waited for two months to see the doctor. He then stated if he was not going to see the doctor he would struggle to commissary because he "[did] not have any soap and what not."

On his way to commissary, Plaintiff spoke to Lieutenant Timothy Qualls and told him about his severe pain and his sick call pass to see Dr. Siddiqui. Qualls told him if his cell door was not on deadlock, his medical appointment was cancelled. Plaintiff expressed concern that his medical appointment was cancelled. Qualls told him to go to commissary and he would make sure Plaintiff saw Dr. Siddiqui after returning from commissary.

When Plaintiff returned to his cell after commissary, he asked John Doe about his medical appointment. John Doe told him he had chosen commissary over his medical appointment. Plaintiff explained that he had spoken with Qualls and had been told to go to commissary and he would see Dr. Siddiqui afterwards. Plaintiff asked John Doe to check with Qualls. John Doe left and when he returned, reported that Qualls said he had not spoken with Plaintiff.

Plaintiff submitted another sick call kite because he was continuing to experience severe, constant pain in his neck was having back problems. He was seen on August 8, 2018. When he asked to see the medical staff ID for the person conducting the sick call, she became irate and threw him out. Shen then entered a false account of the sick call in his medical records. Plaintiff filed a grievance about the incident. During the grievance process, Menard officials Lori Oakley and Kelly Pierce withheld the August 8, 2018 medical record from the ARB.

Plaintiff saw Nurse Practitioner Zimmer on August 9, 2018 and told her about his severe pain issues. He requested an increased dose of his prescription medication and a front handcuff permit. Zimmer became irate and argumentative with Plaintiff and threatened him with a written disciplinary action because she assumed nothing was wrong with him. As he attempted to tell her about other issues, she called for an officer and Plaintiff was directed to go back to his cell. Zimmer wrote a false account of the visit in the medical records.

Wexford has a policy and/or custom of permitting unqualified medical personnel to perform licensed professional's duties such as independently conducting sick calls. Wexford, Menard Warden Jacqueline Lashbrook, Medical Director Dr. Siddiqui, Nursing Supervisor Angela Crain, and IDOC Director John Baldwin knew or had reason to know that LPNs and CMTs are not qualified to perform medical assessments and formulate treatment plans without the supervision of a registered nurse or higher level medical professional and that it is a violation of

the Illinois Nurse Practice Act and increases the risk of harm to patients, including Plaintiff. Wexford, Lashbrook, Dr. Siddiqui, Crain, and Baldwin knew or should have known from the report in the medical class action, *Lippert v. Baldwin*, that unconstitutional practices are taking placed in IDOC, including at Menard. Their failure to correct these practices constitutes deliberate indifference to Plaintiff's serious medical needs.

Lashbrook, Dr. Siddiqui, Crain, Qualls, and John Doe knew or should have known that the failure to enforce the prison deadlock policy or protocol would deny Plaintiff medical attention. Lashbrook, Baldwin, Dr. Siddiqui, Crain, and Skidmore obtained actual knowledge of Plaintiff's serious medical needs and inadequate medical care through his coherent and highly detailed grievances (#325-6-18, #11-7-18, #252-8-18, #2-5-18, and #467-4-18) and failed to exercise their authority to intervene to rectify the situation.

Based on the allegations in the Second Amended Complaint, the Court designates the following claims in *pro se* action:

Count 1: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Jane Doe for failing to treat Plaintiff's severe pain and failing to take any steps to assist him in getting treatment from a physician for his severe pain on April 13, 2018.

Count 2: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Ms. McGee for failing to take any steps to assist Plaintiff while he was suffering from extreme pain and/or denying him medical care on April 26, 2018.

Count 3: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants John Doe and Timothy Qualls for denying him medical care on June 11, 2018.

Count 4: Eighth Amendment deliberate indifference to serious medical needs claim against Defendant Nurse Practitioner Zimmer for denying Plaintiff medical care on August 9, 2018.

Count 5: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Wexford for its policy and/or custom of

permitting unqualified medical personnel to perform licensed professional's duties and/or allowing LPNs and CMTs to render medical services they are not qualified to provide.

Count 6: Eighth Amendment deliberate indifference to serious medical needs claim against Defendants Lashbrook, Dr. Siddiqui, Crain, and Baldwin for allowing LPNs and CMTs to render medical services they are not qualified to provide.

Count 7: Eighth Amendment deliberate indifference to serious medical needs claims against Defendants Wexford, Lashbrook, Dr. Siddiqui, Crain, and Baldwin for the failure to enforce the prison deadlock policy or protocol.

Count 8: State law medical negligence claim against Jane Doe for conducting an assessment of Plaintiff that she was not qualified to perform, failing to treat his severe pain, and failing to take any steps to assist him in getting treatment from a physician for his severe pain on April 13, 2018.

Count 9: Eighth Amendment claim against Defendants Lashbrook, Dr. Siddiqui, Crain, and Baldwin for deliberate indifference to Plaintiff's serious medical needs.

Count 10: State law negligence claim against Qualls and John Doe.

Any other intended claim that has not been recognized by the Court is considered dismissed without prejudice as inadequately pleaded under the *Twombly* pleading standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

**<u>Discussion</u>**

**Counts 1-8**

For the reasons stated in the Court's screening order of the First Amended Complaint, Counts 1 and 8 will proceed against Jane Doe, Count 2 will proceed against McGee, Count 3 will proceed against John Doe and Qualls, Count 4 will proceed against Zimmer, Count 5 will proceed against Wexford Health Sources, Inc., and Counts 6 and 7 will be dismissed without prejudice.

(Doc. 17).

**Count 9**

Plaintiff alleges deliberate indifference by various medical and non-medical prison officials who were allegedly made aware of his objectively serious medical condition and inadequate medical care through his "coherent and highly detailed" grievances and failed to take any action to rectify the situation. Plaintiff's allegations are sufficient to proceed on the deliberate indifference claim in Count 9 against Defendants Lashbrook, Baldwin, Dr. Siddiqui, Crain, and Skidmore. *See Perez v. Fenoglio*, 792 F.3d 768, 781 (7th Cir. 2015) (holding allegations sufficient to state a plausible deliberate indifference claim against prison officials that allegedly obtained actual knowledge of the plaintiff's objectively serious medical condition and inadequate medical care through his coherent and highly detailed grievances and failed to exercise their authority to intervene to rectify the situation).

**Count 10**

Plaintiff seeks to bring a negligence claim against Qualls and John Doe for denying him medical care on June 11, 2018. He alleges Qualls and John Doe owed him a duty to ensure that he received medical care through the prison deadlock policy. In order to state a negligence claim in Illinois, a Complaint must allege facts suggesting that the defendant owed the plaintiff a duty of care, breached that duty, and that the breach was the proximate cause of the plaintiff's injury. *Thompson v. Gordon*, 948 N.E.2d 39, 45 (Ill. 2011) (citing *Iseberg v. Gross*, 879 N.E.2d 278 (2007)). Plaintiff's allegations are sufficient and his negligence claim derives from the same facts as his federal constitutional claim in Count 3. This claim will proceed.

**<u>Identification of Doe Defendants</u>**

Plaintiff is proceeding on claims against two Doe Defendants and the Warden of Menard

Correctional Center was added in his or her official capacity to respond to discovery aimed at identifying the Doe Defendants. (Doc. 17). Once the names of the Doe Defendants are discovered, Plaintiff shall file a motion to substitute the newly identified defendants for the Does Defendant.

**Motion for Clarification**

Plaintiff has filed a motion seeking information as to when service will be complete. (Doc. 54). The Motion is **GRANTED**. Defendants Zimmer, Qualls, Wexford, and the Warden of Menard returned Waivers of Service. (Docs. 22, 24, 25). Service will not be made on the Doe Defendants until such time as Plaintiff has identified them by name in a properly filed motion for substitution of party. The Court will seek Waivers of Service for the newly added Defendants.

A request for waiver of service was returned unexecuted for Defendant McGee (Doc. 23) and summons was recently returned unexecuted (Doc. 51). Plaintiff is required to provide a valid service address within 30 days of the date of this Order so that process may be served upon Defendant McGee. Plaintiff is WARNED that his failure to comply with this Order will result in dismissal of Defendant McGee from this lawsuit.

**Disposition**

The Motion for Leave to File [Second] Amended Complaint is **GRANTED** (Doc. 37) and the Clerk of Court is **DIRECTED** to file the proposed Amended Complaint submitted with the motion as the Second Amended Complaint. The Clerk of Court is **DIRECTED** to correct the docket sheet to reflect the complete and correct spellings of Defendants' names in accordance with footnote 1 and the case caption.

Counts 1 and 8 will proceed against Jane Doe, Count 2 will proceed against McGee, Count 3 will proceed against Qualls and John Doe, Count 4 will proceed against Zimmer, Count 5 will proceed against Wexford Health Sources, Inc., Count 9 will proceed against Lashbrook, Baldwin,

Dr. Siddiqui, Crain, and Skidmore, and Count 10 will proceed against Qualls and John Doe. Counts 6 and 7 are **DISMISSED** without prejudice. The Warden of Menard Correctional Center was previously added to the docket for purposes of responding to discovery aimed at identifying the Doe Defendants and will continue to be a defendant for that purpose.

The Clerk of Court shall prepare for newly added Defendants Lashbrook, Baldwin, Dr. Siddiqui, Crain, and Skidmore: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Second Amended Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff is **ORDERED** to provide a valid service address within 30 days of the date of this Order so that process may be served upon Defendant McGee. Plaintiff is WARNED that his failure to comply with this Order will result in dismissal of Defendant McGee from this lawsuit

Service shall not be made on the Doe Defendants until such time as Plaintiff has identified

them by name in a properly filed motion for substitution of party. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for the Doe Defendants.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Second Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.** As the Warden of Menard Correctional Center is in the case solely for discovery purposes, the Warden need not respond to the Second Amended Complaint.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff's Motion for Clarification (Doc. 54) is **GRANTED**.

Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

**DATED: October 13, 2020**

***s/ Staci M. Yandle_____***
**STACI M. YANDLE**
**United States District Judge**

**Notice to Plaintiff**

The Court will take the necessary steps to notify the appropriate Defendants of your lawsuit and serve them with a copy of your Second Amended Complaint. After service has been achieved, the Defendants will enter their appearance and file an Answer to your Second Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When all the Defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.